UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

MHM

(CHRISTOPHER KNOX,) (DONNIE WHITE),
(ANTHONY GAY ), ( ———— ), INDIVIDUALLY
AND ON BEHALF OF THE PLAINTIFF CLASS,
PLAINTIFFS PRO SE. ET AL.

— VS —

DR. KELLY RHODES, DR. RAKESH CHANDRE, DR. MARVIN POWERS,
DR. WENDY NAVARRO, DR. WILLARD A. ELYEA, DR. ADEEL KHAN,
DR. LAWRENCE WEINER, DR. DIANA DOBIER, DR. DAVID WEIDNER,
DR. SCOTT, DR. GNU, DR. CLAUDIA KACHIGIAN, ROGER WALKER,
JESSIE MONTGUMERORY, JASON GARNETT, DANNY HARTLINE,
KEN BARTLEY, AND ILLINOIS DEPARTMENT OF CORRECTIONS, A
PUBLIC ENTITY. ET AL.

DEFENDANTS

08CV1777
JUDGE MANNING
MAGISTRATE JUDGE MASON

JURY TRIAL DEMANDED

**RECEIVED**

MAR 1 4 2008
3-14-2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

CLASS - ACTION

COMPLAINT FOR INJUNCTION RELIEF,
DECLARATORY JUDGMENT AND DAMAGES

NOW COMES PLAINTIFF'S, (CHRISTOPHER KNOX,) (DONNIE WHITE), (ANTHONY GAY ),
( ———— ), CURRENT AND FORMER PRISONERS AT THE TAMMS C|C.
ILLINOIS SUPERMAX. PRISON ("TAMMS"). ON THEIR OWN BEHALF AND ON
BEHALF OF ALL SERIOUSLY MENTALLY ILL PRISONERS WHO ARE NOW, HAVE
BEEN BEFORE, OR WILL BE HEREAFTER INCARCERATED AT TAMMS, FOR
COMPLAINT AGAINST THE DEFENDANTS, AND STATE AS FOLLOWS • • •

NATURE OF THE ACTION

1). THIS IS A CLASS ACTION LAW SUIT BROUGHT PURSUANT TO SECTION.
42 U.S.C. § 1983. TO REDRESS VIOLATIONS OF THE PLAINTIFF'S
RIGHTS: (1). UNDER THE EIGHT AND FOURTEENTH AMENDMENTS
TO THE UNITED STATES CONSTITUTION TO BE FREE OF CRUEL AND
UNUSUAL PUNISHMENT. WHILE THEY ARE INCARCERATED AT TAMMS.

1

2). under the Fourteenth Amendment to receive individualized mental health treatment by professionals exercising their professional judgment, and pursuant to the Americans with Disabilities Act (" the ADA "), 42 U.S.C. §§ 12131, et seq, and the Rehabilitation Act (" the Rehab Act ").... And 29 U.S.C. § 794, to be free of discrimination on account of their disabilities. Plaintiffs seek injunction relief, directing defendants to halt their unlawful conduct, damages from the individual defendants, who are employees or agents of the department; a judgment declaring the defendants' acts unconstitutional and violative of the ADA and the Rehab Act......

## INTRODUCTION

3). In this lawsuit, seriously mentally ill prisoners at Tamms, seek relief for defendants' deliberate indifference to their mental health needs and for the cruel and unusual punishment of requiring them to live under the harsh and psychologically injurious conditions at Tamms, while they are seriously mentally ill, as well as relief for defendants failure to grant them their right to be free of ──────── discrimination on account of their disabilities under the ADA and the Rehab Act. The individual defendants' are the department officials, responsible for deciding which prisoners are sen to Tamms, establishing and maintaining conditions there, and providing medical and mental health services there....

4). The department, a public entity, is sued based on the ADA and the Rehab Act....

5). Tamms is a so-called supermax prison that practices behavior modification through sensory deprivation based on the near-total isolation of the inmate – a practice whose destructive effects are well documented..

2

6). AS HARMFUL AS THIS EXPERIENCE IS FOR MOST PRISONERS, IT IS MORE AGONIZING FOR THE SERIOUSLY MENTALLY ILL PRISONERS, MANY OF WHOM RESIDE IN TAMMS AND WHO COMPRISE THE CLASS OF PLAINTIFFS'. FOR SERIOUSLY MENTALLY ILL PRISONERS, THE CONDITIONS AT TAMMS - EXTREME SOCIAL ISOLATION, RESTRICTED ENVIRONMENTAL STIMULATION, SEVERELY RESTRICTED MOVEMENT, AND HARSH PUNISHMENT FOR PROBLEMATIC BEHAVIOR CAUSED BY THEIR ILLNESSES - BRING TORMENTING PAIN. THE DAMAGE DONE BY THESE CONDITIONS IS LIKELY TO BE LONG-TERM AND MAY BE PERMANENT. AS SUCH, IT HARMS SOCIETY AS WELL AS THESE PRISONERS. THIS IS SO BECAUSE MOST OF THE SERIOUSLY MENTALLY ILL PRISONERS AT TAMMS EVENTUALLY WILL BE RELEASED FROM PRISON AND WILL RETURN TO THE STREETS SICKER, ANGRIER AND MORE VIOLENT. IN THE END SOCIETY AT LARGE WILL PAY THE PRICE FOR THE UNLAWFUL TREATMENT OF THE SERIOUSLY MENTALLY ILL PRISONERS AT TAMMS. • • • ••

## JURISDICTION AND VENUE

7). THIS ACTION IS BROUGHT PURSUANT TO SECTION 42 U.S.C. § 1983, UNDER THE EIGHT AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTIONS. THEREFORE THIS COURT HAS JURISDICTION OVER THIS ACTION PURSUANT TO 28 U.S.C. §§ 1331 AND 1343 (A)(3).

8). DECLARATORY RELIEF IS SOUGHT PURSUANT TO 28 U.S.C. §§ 2201 AND 2202. • • • •

9). VENUE IS PROPER IN THE NORTHERN DISTRICT OF ILLINOIS, UNDER 28 U.S.C. § 1391 (B) BECAUSE AT LEAST ONE OR MORE OF THE DEFENDANTS RESIDES IN THE DISTRICT AND A SUBSTANTIAL PART OF THE EVENTS AND OMISSIONS GIVING RISE TO PLAINTIFF'S CLAIMS OCCURRED IN THE DISTRICT. • • •

## EXHAUSTION OF ADMINISTRATIVE REMEDY

10). PLAINTIFF'S HAS EXHAUSTED ALL AVAILABLE ADMINISTRATIVE REMEDIES. BY FILING GRIEVANCE'S WITH THE COUNSELOR'S THE GRIEVANCE OFFICER'S. APPEALED TO THE ADMINISTRATIVE REVIEW BOARD. AND ALL GRIEVANCE'S AND APPEAL'S WERE DENIED. • • •

## Class Action Allegations

11). This action is brought by the named plaintiffs, on the behalf of all seriously mentally ill prisoners. Who are now, have been before, or will be hereafter incarcerated at Tamms, who have serious mental illnesses, defines as a substantial disorder of thought or mood which significantly impairs the judgment, behavior, and capacity to recognize reality or cope with the ordinary demands of life within the prison environment and is manifested by substantial pain or disability. . . .

12). A class action is proper pursuant to rules 23 (B) (1), 23 (B) (2), and 23 (B) (3), of the Federal of civil procedure. . . .

13). Members of the class on behalf of whom plaintiffs' sue are so numerous that joinder of all members is impractical. Seriously mentally ill prisoners account for approximately 75 to 85 percent of the population at Tamms, which today is approximately 270 and may rise to as high as 480. The class also includes at least 57 prisoners previously housed at Tamms who were transferred to the department's mental health unit (at Dixon clc) and other facilities, because of serious mental crises they had while at Tamms. Adding to the impracticality of joinder is the constant change in the inmate population at Tamms and the undesirability of subjecting countless prisoners to similar conditions before a court could conduct trials on individual claims. . . .

14). There are common questions of law and fact affecting the rights of seriously mentally ill prisoners to be free from unconstitutional cruel and unusual punishment. The claims of the class members involve common fact questions. As does the inquiry into the nature of the overall mental health care system. The common legal questions include whether the mental health care system compoets with the constitutional standards, whether subjecting seriously mentally ill prisoners to the conditions at Tamms constitutes cruel and unusual punishment, whether Tamms prisoners are receiving individuated mental health treatment, and whether defendants are discriminating against class — members on account of their disabilities. . . . .

4

15 ). Plaintiff's claims are typical of the claims of the class, and plaintiffs' can fairly and adequately represent and protect the interests of the class . . . .

16 ). Separate injunctive and declaratory actions maintained by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class, thereby establishing incompatible standards of conduct for defendants . . . Adjudication regarding individual class members would, as a practical matter, be dispositive of or impairs the interests of other members not parties to the adjudication or substantially impair their ability to protect their interests . . . . .

17 ). Defendants' have acted or refused to act on grounds generally applicable to the class, that plaintiffs represent; thereby making final injunctive or corresponding declaratory relief appropriate for the class as a whole . .

18 ). The questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy . . . . . . .

5

# PARTIES

## PLAINTIFFS'

19). PLAINTIFF, (Christopher Knox,) has been incarcerated at TAMMS since about January 10 2006. He suffers from a serious mental illness and has done so for many years...

20). PLAINTIFF, ( ), has been incarcerated at TAMMS since about 2003 and 2004. He suffers from a serious mental illness and has done so for many years...

21). PLAINTIFF, ( ), has been incarcerated at TAMMS since about 2004. He suffers from a serious mental illness and has done so for many years...

22). PLAINTIFF, ( ), has been incarcerated at TAMMS since about 2005 or 2006. He suffers from a serious mental illness and has done so for many years...

## DEFENDANTS

23). The Department is an Illinois state Department of Corrections, that is responsible for the care, custody, treatment, and rehabilitation of all persons committed to its custody, and for all Illinois correctional facilities.. Defendant, Department, is sued in both individual and official capacity...

24). Defendant, Roger E Walker, is director of the Department and has overall responsibility for the total administration of all correctional facilities within the state, he has personal, first-hand knowledge of the operations of TAMMS, and personally approving and creating the harsh and psychological standards use at TAMMS.. Defendant, Walker, is sued in both his individual and official capacity.. . . . .

25). Defendant, Jessie Montgumerory, is Associate Director, of the Department and as such has overall responsibility for deciding who is transferred into TAMMS. He has first-hand knowledge of the operation of TAMMS, and was personally involved in approving and creating the harsh and psychological standards use at TAMMS. Defendant, Montgumerory, is sued in both his individual and official capacity....

26). Defendants, Jason Garnett, and Danny Hartline, served as Deputy Director's for the Department and such has overall responsibilities of the administration and deciding who's transferred to and out of TAMMS. They both has first-hand knowledge of the operation of TAMMS. And they were both personally involved in approving and creating the harsh and psychological standards use at TAMMS. Defendants, Montgumerory and Hartline, are both sued in their individual and official capacities.

27). Defendant, Ken Bartley, is the chief administrative officer of the Department, and as such, has ultimate responsibility for the entire operation of the facility including implementing all state laws and the Department policies, practices, and procedure that affect prisoners confined at TAMMS. He has first-hand knowledg of the operation of TAMMS, and was personally involved in approving and creating the harsh and psychological standards use at TAMMS. Defendant, Bartley, is sued in both his individual and official capacity.....

28). Defendant, Dr. Willard Elyea, is the Medical Director of the Department, and as such, has overall responsibility for providing health care to prisoners of TAMMS, including mental health care. He has first-hand knowledge of the operation of TAMMS, and was personally involved in approving and creating the harsh and psychological standards use at TAMMS. Defendant, Elyea, is sued in both his individual and official capacity....

29 ). DEFENDANT, DR. WENDY NAVARRO, IS CHIEF OF MENTAL HEALTH SERVICES OF THE DEPARTMENT AND AS, SUCH, HAS OVERALL RESPONSIBILITY FOR PROVIDING MENTAL HEALTH CARE TO PRISONERS OF TAMMS. SHE HAS FIRST-HAND KNOWLEDGE OF THE OPERATION OF TAMMS, AND WAS PERSONALLY INVOLVED IN APPROVING AND CREATING THE HARSH AND PSYCHOLOGICAL STANDARDS USE AT TAMMS, DEFENDANT, NAVARRO, IS SUED IN BOTH HER INDIVIDUAL AND OFFICIAL CAPACITY. . . . .

30 ). DEFENDANT, DR. MARVIN POWERS, IS THE MEDICAL DIRECTOR, OF THE DEPARTMENT. HE OVERSEES THE HEALTH CARE UNIT AT TAMMS, WHICH IS RESPONSIBLE FOR PROVIDING MEDICAL AND MENTAL HEALTH SERVICES FOR PRISONERS. HE HAS FIRST-HAND KNOWLEDGE OF THE OPERATION OF TAMMS, AND WAS PERSONALLY INVOLVED IN APPROVING AND CREATING THE HARSH AND PSYCHOLOGICAL STANDARDS USE AT TAMMS. . . DEFENDANT, POWERS, IS SUED IN BOTH HIS INDIVIDUAL AND OFFICIAL CAPACITY. . . . . . .

31 ). DEFENDANT, DR. KELLY RHODES, IS THE SUPERVISING CLINICAL PSYCHOLOGIST AT TAMMS, SHE PROVIDES MENTAL HEALTH CARE TO PRISONERS AT TAMMS, AND OVERSEES THE STAFF OF APPROXIMATELY FOUR SOCIAL WORKERS WHO SERVE AS THE PRISON'S MENTAL HEALTH PROFESSIONALS. SHE HAS FIRST-HAND KNOWLEDGE OF THE OPERATION OF TAMMS, AND WAS PERSONALLY INVOLVED IN APPROVING AND CREATING THE HARSH AND PSYCHOLOGICAL STANDARDS USE AT TAMMS. DEFENDANT RHODES, IS SUED IN BOTH HER INDIVIDUAL AND OFFICIAL CAPACITY. . .

32). DEFENDANTS, DRS. CHANDRA, KHAN, KACHIGIAN, SERVED AS PSYCHIATRIST'S OF THE DEPARTMENT. THEY PROVIDES MENTAL HEALTH SERVICES TO PRISONERS AT TAMMS, AND ADMINISTERS PSYCHOTROPIC DRUGS TO THEM. THEY HAS FIRST-HAND KNOWLEDGE OF THE OPERATION OF TAMMS, AND WAS PERSONALLY INVOLVED IN APPROVING AND CREATING THE HARSH AND PSYCHOLOGICAL STANDARDS USE AT TAMMS. DEFENDANTS, CHANDRA, KHAN, KACHIGIAN, IS SUED IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES. . . . .

33). DEFENDANT, DR. LAWRENCE WEINER, IS THE THERAPEUTIC SERVICES ADMINISTRATOR, OF THE DEPARTMENT, AND AS SUCH HAS OVERALL RESPONSIBILITY FOR PROVIDING MENTAL HEALTH SERVICES TO ALL PRISONERS. HE HAS FIRST-HAND ——— KNOWLEDGE OF THE OPERATION OF TAMMS, AND WAS PERSONALLY INVOLVED IN APPROVING AND CREATING THE HARSH AND PSYCHOLOGICAL STANDARDS USE AT TAMMS. DEFENDANTS WEINER, IS SUED IN BOTH HIS INDIVIDUAL AND OFFICIAL CAPACITY. . . . .

34). DEFENDANT, DR. DAVID WEIDNER, IS A POSTDOCTORAL RESIDENT, AND AS SUCH HAS OVERALL RESPONSIBILITY FOR PROVIDING MENTAL HEALTH CARE TO PRISONERS. HE HAS FIRST-HAND KNOWLEDGE OF THE OPERATION OF TAMMS . . AND HE WAS PERSONALLY INVOLVED IN APPROVING AND CREATING THE HARSH AND PSYCHOLOGICAL STANDARDS USE AT TAMMS. DEFENDANT, WEIDNER, IS SUED IN BOTH HIS INDIVIDUAL AND OFFICIAL CAPACITY. . . .

35). DEFENDANT, DR. DIANA DOBIER, IS A PSYCHOLOGY PROGRAM DIRECTOR, OF THE DEPARTMENT, AND AS SUCH HAS OVERALL RESPONSIBILITY FOR PROVIDING MENTAL HEALTH CARE TO PRISONERS. SHE HAS FIRST-HAND KNOWLEDGE OF THE OPERATION OF TAMMS. AND SHE WAS PERSONALLY INVOLVED IN APPROVING AND CREATING THE HARSH AND PSYCHOLOGICAL STANDARDS USE AT TAMMS. DEFENDANT, DOBIER, IS SUED IN BOTH HER INDIVIDUAL AND OFFICIAL CAPACITY. .

36). DEFENDANT, DR. SCOTT, IS A STAFF PSYCHOLOGIST, OF THE DEPARTMENT, AND AS SUCH, HAS OVERALL RESPONSIBILITY FOR PROVIDING MENTAL HEALTH TO PRISONERS. SHE HAS FIRST-HAND KNOWLEDGE OF THE OPERATION OF TAMMS. AND SHE WAS PERSONALLY INVOLVED IN APPROVING AND CREATING THE HARSH AND PSYCHOLOGICAL STANDARDS USE AT TAMMS. DEFENDANT, SCOTT, IS SUED IN BOTH HER INDIVIDUAL AND OFFICIAL CAPACITY. . . . . .

37). DEFENDANT. DR. GNU. IS THE MEDICAL DIRECTOR OF THE DEPARTMENT. HE OVERSEES THE HEALTH CARE UNIT. WHICH HE IS RESPONSIBLE FOR PROVIDING MEDICAL AND MENTAL HEALTH SERVICES FOR PRISONERS. HE HAS FIRST-HAND —— KNOWLEDGE OF THE OPERATION OF TAMMS. AND HE WAS PERSONALLY INVOLVED IN APPROVING AND CREATING THE HARSH AND PSYCHOLOGICAL STANDARDS USE AT TAMMS. DEFENDANT. GNU. IS SUED IN BOTH HIS INDIVIDUAL AND OFFICIAL CAPACITY. . . . .

38). AT ALL TIMES RELEVANT TO THIS ACTION. DEFENDANTS ACTED UNDER THE COLOR OF THE LAWS. REGULATIONS. AND CUSTOM OF THE STATE OF ILLINOIS. ALL DEFENDANTS ARE SUED IN BOTH THEIR INDIVIDUAL AND OFFICIAL CAPACITIES. THE DEFENDANTS' ACTIONS CONSTITUTES "STATE ACTION" AS DEFINED UNDER FEDERAL LAW. . . . .

COUNT #

AS DEFENDANTS ARE AWARE, TAMMS houses MANY PRISONERS who ARE SERIOUSLY MENTALLY ill

39). TAMMS IS A NEWLY BUILT FREE-STANDING FACILITY SPECIALLY DESIGNED TO MANAGE AND CONTROL VIOLENT OR SERIOUSLY DISRUPTIVE PRISONERS. IT IS LOCATED AT THE SOUTHERN TIP OF ILLINOIS, NEAR A SMALL TOWN OF THE SAME NAME. ITS FIRST SIX PRISONERS ARRIVED ON MARCH 9, 1998. TODAY, APPROXIMATELY 270 PRISONERS RESIDE THERE. THE FACILITY IS BUILT TO 500 PRISONERS AS WELL AS THE STATE'S NEW EXECUTION CHAMBER.

40). THE DECISION ABOUT which OF ILLINOIS' 53,000 PRISONERS WILL BE TRANSFERRED TO TAMMS IS MADE BY DEFENDANTS — JESSIE MONTGUMERORY, WITH THE INPUT FROM FIVE DEPUTY DIRECTOR'S who WORKS UNDER HIS SUPERVISION, INCLUDING DEFENDANTS, JASON GARNETT AND DANNY HARTLINE . . . . . DEFENDANTS, GARNETT AND BARTLEY, HAVE SAID THAT PLACEMENT AT TAMMS WILL lAST AT lEAST A YEAR. INFORMALLY, DEFENDANTS ARE TELLING SOME PRISONERS THEY WILL STAY AT TAMMS FOR THE REMAINDER OF THEIR INCARCERATION TERMS, which MAY BE A MATTER OF DECADES . . . .

41). THE PRISONERS SELECTED FOR PLACEMENT AT TAMMS ARE THOSE DEFENDANTS, DEEMS THE MOST VIOLENT AND/OR POTENTIALLY DISRUPTIVE. IT IS WELL KNOWN THAT MANY SERIOUSLY MENTALLY ill PRISONERS EXHIBIT VIOLENT AND ASSAUITIVE BEHAVIOR . . ALThough "MENTAL HEALTH CONCERNS" ARE ONE OF THE FACTORS CONSIDERED IN DECIDING WHETHER AN INMATE shoulD BE PLACED AT TAMMS. ( ILL. ADM. CODE, § 505.40 ). . . . . THERE IS NO BAR TO PlACING SERIOUSLY ill PRISONERS AT TAMMS. DEFENDANTS DO NOT SCREEN PRISONERS ADEQUATELY WHEN THEY ARE TRANSFERRED TO TAMMS TO DETERMINE IF THEY ARE SERIOUSLY MENTALLY ill, THEY DO NOT PROHIBIT THE TRANSFER OF PRISONERS TO TAMMS WHEN THEY KNOW THEM TO BE MENTALLY ill, THEY DO NOT EXAMINE THEM ADEQUATELY AS THEY CONTINUE TO RESIDE AT TAMMS TO DETERMINE IF THEY HAVE DECOMPENSATED TO A GREATER DEGREE THAN THEY WOULD HAVE AT ANOTHER FACILITY, AND THEY DO NOT REMOVE PRISONERS FROM TAMMS EVEN WHEN THEY KNOW THAT THE PRISONERS PLACEMENT AT TAMMS HAS CAUSED HIM TO DECOMPENSATE MENTALLY. BECAUSE OF THIS, A HIGh PERCENTAGE OF THE PRISONERS RESIDING AT TAMMS ARE IN FACT SERIOUSLY MENTALLY ill OR WILL BECOME SERIOUSLY MENTALLY ill, IF CONTINUE TO lIVE UNDER THE HARSH AND PSYCHOLOGICAL CONDITIONS OF THEIR CONFINEMENT. . . . . .

11

42 ). AT TAMMS, PRISONERS ARE SUBJECTED TO NEAR TOTAL ISOLATION IN AN EXTRAORDINARY RESTRICTED ENVIRONMENT. THESE CONDITIONS ARE KNOWN TO CAUSE SERIOUS PSYCHOLOGICAL PROBLEMS IN SOME PRISONERS. "NOTABLY THOSE WHO HAVE SERIOUS PRE-EXISTING MENTAL ILLNESSES, INCLUDING CHRONIC LONG-STANDING DEPRESSION, SCHIZOPHRENIA, AND OTHER LONG-STANDING, SEVERE MENTAL ILLNESSES; THOSE WITH CERTAIN PRE-EXISTING DISORDER. WHY SUCH AS BORDERLINE PERSONALITY DISORDERS AND IN SOME CASES, THOSE WITH NO PRE-EXISTING DISORDER. THE PSYCHOLOGICAL PROBLEMS DISPLAYED BY AT-RISK PRISONERS INCLUDE SYMPTOMS SUCH AS PERCEPTUAL DISTURBANCES . . . ( FOR EXAMPLE, HALLUCINATIONS), HYPERSENSITIVITY TO EXTERNAL STIMULATION, AGGRESSIVE FANTASIES, OVERT PARANOIA, PROBLEMS WITH CONCENTRATING AND WITH CONTROLLING IMPULSES, ANXIETY/PANIC DISORDER, AND OVERT PSYCHOTIC DISORGANIZATION, AS WELL AS ATTEMPTED SUICIDE AND PHYSICAL TRAUMA INCLUDING SELF-MUTILATION . . . . .

43 ). PRISONERS, WHO BEGIN TO EXPERIENCE THESE SERIOUS PSYCHOLOGICAL INJURIES ARE CAUGHT IN A CYCLE THAT ARE DESIGNED TO WORSENS THEIR ILLNESSES. THE ILLNESSES MAKES THEM ACT DESTRUCTIVELY TOWARD THEMSELVES, THEIR ENVIRONMENT, OR THE STAFF. IN RESPONSE, DEFENDANTS IGNORE THEIR ILLNESSES AND PUNISH THEIR CONDUCT. THIS PUNITIVE KIND OF TREATMENT EXACERBATES THEIR ILLNESSES, WHICH ALSO INCREASES THEIR DESTRUCTIVENESS. DAY AFTER DAY, CERTAIN SERIOUSLY MENTALLY ILL PRISONERS AT TAMMS, CUT THEIR ARMS, NECKS, LEGS, PENIS, ABDOMENS, INSERT FOREIGN FOREIGN OBJECTS INTO THEIR URETHRA. REPEATEDLY. SOME OF THESE PRISONERS ATTEMPT TO HANG THEMSELVES OR ATTEMPT TO SWALLOW RAZORS OR BROKEN PIECES OF MIRROR. ONE OF THESE ——— HAS BEEN KNOWN TO CREATE LARGE RED WOUNDS ON HIS SHOULDERS FROM BITING HIMSELF; ANOTHER HAS BEEN OBSERVED EATING HIS OWN FLESH . . . . .

44 ). DEFENDANTS, RESPOND TO THIS DERANGED BEHAVIOR WITH PUNISHMENTS SUCH AS THE SO-CALLED CELL EXTRACTION. A PROCEDURE IN WHICH MEMBERS OF A TACTICAL TEAM, ARMED WITH BATONS AND PROTECTED WITH PLASTIC SHIELDS, SPRAY BURNING CHEMICAL SUBSTANCES IN THE INMATE'S FACE AND THEN FORCIBLY "EXTRACT HIM FROM HIS CELL. THEY ORDER PRISONERS CELL'S TO BE STRIPPED OF ALL PROPERTY. (EVEN THEIR MATTRESS AND BLANKET) AND FORCE THE MEN TO LIVE IN THIS BEREFT ENVIRONMENT, OFTEN WITHOUT CLOTHES OR A BLANKET. FOR DAYS AT A TIME. OR SOMETIMES FOR WEEKS AT A TIME. THEY ORDER PLEXIGLASS SHIELDS TO BE PLACED IN FRONT OF THE PRISONERS DOORS, OR BLACK BOXES PLACED OVER THE SLOT WHERE FOOD IS PASSED, MAKING ANY COMMUNICATION EVEN MORE DIFFICULT. THEY ORDER THAT PRISONERS CENTRALLY CONTROLLED WATER SUPPLY TO BE SHUT OFF FOR HOURS AT A TIME. AND SOMETIMES FOR DAYS AT A TIME..

45). MENTALLY ILL PRISONERS ALSO ARE PUNISHED BY THE USE OF EXCESSIVE FORCE BY PRISON GUARDS. ALTHOUGH DEFENDANTS PRESUMABLY DO NOT OFFICIALLY SANCTION THIS CONDUCT, THEY UNOFFICIALLY CONDONE IT BY CREATING AN ATMOSPHERE OF TERROR AND BRUTALITY AT TAMMS; FAILING TO FULLY — INVESTIGATE PRISONERS COMPLAINTS OF EXCESSIVE FORCE; FAILING TO PUNISH THE GUARDS WHO USE EXCESSIVE FORCE; AND PUNISHING OF PRISONERS WHO COMPLAIN ABOUT IT....

46). MENTALLY ILL PRISONERS ALSO ARE GIVEN MENTAL HEALTH CARE AND TREATMENT THAT IN FACT IS PUNISHMENT AND NOT TREAT-MENT. THEY ARE FORCIBLY AND AGAINST THEIR WILL GIVEN INJECTIONS OF MEDICINE TO SEDATE THEM. THEY ARE BOUND IN FOUR-POINT RESTRAINT SOMETIMES FOR HOURS AT A TIME OR SOMETIME FOR DAYS AT A TIME. WHILE THEY ARE COMPLETELY NAKED. THEY ARE STRIPPED OF ALL THEIR CLOTHES AND HELD IN COLD "STRIP CELLS" IN THE HEALTH CARE UNIT OR ON THE ELEVATED SECURITY WINGS. WHICH ARE BARREN OF ANYTHING EXCEPT A CEMENT BED AND A TOILET, WHERE THEY CAN EARN THE RIGHT TO GET THEIR CLOTHES BACK ONLY BY PROMISING THEY WILL NOT TRY TO KILL THEMSELVES.....

COUNT # 2

## THE CONDITIONS AT TAMMS ARE DESIGNED TO AND DO CAUSE PSYCHOLOGICAL DAMAGES

47). SERIOUSLY MENTAlly ill PRISONERS ENTER TAMMS AT THEIR PERIl, FOR THE CONDITIONS THERE ARE DESIGNED TO AND DO CAUSE PSYCHOLOGICAL DAMAGE. AT TAMMS, CONTROL IS ALSO EXERCISED THROUGH EXTREME SOCIAL ISOLATION. SEVERELY —— RESTRICTED MOVEMENT, AND AN ENVIRONMENT THAT SEVERELY RESTRICTS STIMULATION. A CENTRALIZED CONTROl BOOTH OPERATES All lIGHTS AND DOORS AND THE WATER SUPPLY. VIDEO CAMERAS PROVIDE VISUAL SURVEILLANCE, AND INTERCOMS PROVIDE COMMUNICATION WITHOUT HUMAN CONTACT AND Allow GUARDS TO EAVESDROP ON PRISONERS..

48). TAMMS CONSISTS OF EIGHT SElF-CONTAINED CEll BlOCKS, CAlled PODS EACH HOLDING SIX WINGS OF TEN CEllS. TO RESTRICT THE MOVEMENT OF PRISONERS, EACH POD IS A SElF-CONTAINED lIVING UNIT THAT HOLDS AN EXERCISE AREA, SHOWERS, A SMAll LAW LIBRARY, A NURSES' STATION. A "MULTI-PURPOSE ROOM" USED BY THE MEDICAL AND MENTAL HEALTH STAFF, AND A CENTRAL CONTROL BOOTH FOR CORRECTIONS STAFF. MOVEMENT BETWEEN THE PODS IS THROUGH AN UNDERGROUND TUNNEL. AT TAMMS, EACH INMATE SPENDS 23 TO 24 HOURS A DAY, SEVEN DAYS A WEEK, IN A SINGLE 80-SQUARE FOOT CONCRETE CEll. EACH CEll CONTAINS ONLY A CONCRETE BED, A STAINLESS STEEL COMBINATION SINK AND TOILET, A MIRROR, A SHELF THAT SERVES AS A DESK, AND (FOR SOME INMATES) TWO BOXES FOR STORING PERSONAL PROPERTY. EACH CEll HAS A NARROW WINDOW PLACED HIGH UP ON THE WALL, MAKING IT POSSIBLE FOR THE DEFENDANTS TO SAY THAT THE CEll HAS NATURAL lIGHT BUT ITS' IMPOSSIBLE FOR THE INMATE TO SEE ANYTHING UNLESS HE STANDS ON HIS BED. THE DOOR TO THE CEll IS MADE OF HEAVY GAUGE STEEL PERFORATED WITH DIME SIZED HOLES THAT ARE DIFFICULT TO SEE THROUGH. EACH DOOR CONTAINS A SLOT FOR FOOD, CAlled A CHUCK HOLE. THE PRISONERS' VIEW THROUGH THE PERFORATED STEEL MESH IS OF RAW CONCRETE WALL AND THE OCCASSIONAL —— DEPARTMENT EMPLOYEES WHO PASSES BY; PRISONERS CANNOT SEE EACH OTHER......

14

49). PRISONERS DO NOT LEAVE THESE CELLS FOR MEALS, WHICH ARE SERVED ON PLASTIC TRAYS, PRISONERS WHO ARE ON SUICIDE WATCHES ARE SERVED MEALS ON PAPER COFFEE FILTERS AND HAS TO EAT OFF OF THE FLOOR, WHAT DEFENDANTS CALLED FINGER FOOD, WHICH ARE PUSHED THROUGH THE CHUCKHOLE; THE TRAYS AND UTENSILS MUST BE PLACED BACK IN THE CHUCK HOLE WITHIN 30 MINUTES. PRISONERS DO NOT LEAVE TO VISIT WITH OTHER PRISONERS; SUCH CONTACT IS FORBIDDEN. THEY DO NOT LEAVE FOR COMMUNAL RELIGIOUS SERVICES, EDUCATIONAL PROGRAMS, OR JOBS, NONE OF WHICH EXIST AT TAMMS. THOSE WHO CAN READ ( MANY PRISONERS AT TAMMS HAVE ONLY RUDIMENTARY READING AND WRITING SKILLS ). MAY KEEP SOME BOOKS IN THEIR CELLS ○ ○ ○

50). MOST PRISONERS CANNOT LISTEN TO THE RADIO OR WATCH TELEVISION, WHICH ARE PROVIDED ONLY FOR THE PRISONERS IN ADMINISTRATIVE DETENTION WHO HAVE ADVANCED TO " BEHAVIOR LEVEL 3" SOMETHING FEW MENTALLY ILL PRISONERS CAN DO ○ ○ ○ ○ ○ ( PRISONERS AT TAMMS ARE EITHER IN ADMINISTRATIVE DETENTION, WHICH IS OSTENSIBLY A NON-DISCIPLINARY STATUS OF CONFINEMENT THAT REMOVES AN INMATE FROM GENERAL POPULATION, OR DISCIPLINARY SEGREGATION, RESULTING FROM PUNISHMENT ORDERED AFTER A RULE INFRACTION )○ ○ ○ ○ ○

51). PRISONERS. CANNOT SEE OR SOCIALIZE WITH OTHER PRISONERS, EXCEPT BY YELLING INTO THE WING, WHERE THE EXTREME ECHOING EFFECT MAKES IT HARD TO HEAR AND UNDERSTAND. ON NEARLY EVERY WING, ONE OR TWO PRISONERS SCREAM. AND BANG ON THE WALLS AND DOORS THROUGHOUT THE DAY AND NIGHT, SO THAT OTHER PRISONERS OFTEN CANNOT SLEEP ○ ○ ○○

52). PRISONERS REGULARLY LEAVE THEIR CELLS ONLY TO EXERCISE OR TAKE A SHOWER ONE TO FOUR TIMES A WEEK. OCCASSIONALLY, THEY VISIT THE SATELLITE LAW LIBRARY OR GO TO THE MULTI PURPOSE ROOM TO SEE A SOCIAL WORKER; ONLY RARELY DO THEY TRAVEL OUTSIDE THE POD TO THE HEALTH CARE UNIT OR THE VISITOR'S ROOM ○○ AT NO TIME, ARE TWO OR MORE PRISONERS ON A WING ALLOWED OUTSIDE THEIR CELLS AT THE SAME TIME ○ ○ ○ ○○

53). Whenever an inmate leaves his cell for any purpose except exercise and shower, and each time he returns, he must submit to a full body cavity search. First he has to removes his clothes and hands them to the guard. Standing naked, he must display his ears, feet, hands. Then he must bend over, his back to the guards and spread his buttocks, while a guard shine a flash between his buttocks. He must raise his penis so the guards can examine his testicles. He may be ordered to expose the grove around the tip of his penis or, if he is not circumcised to pull back the foreskin. . . .

54). After dressing, he is handcuffed and then, kneeling or lying on the floor, his legs are shackled by guards wearing latex or leather gloves. If he is moving outside his pod he is surrounded by two or three guards, who place their arms on his chest and shoulders, and his movements may be tracked by a guard who has access to a semi-automatic rifle. These punitive and humiliating exchanges are the only times a tamms inmate feels — another person's touch, except when he is examined by a doctor, which usually takes place while the inmate's legs are shackled and his arms are held by guards. . .

55). Exercise takes place in concrete "yard" about 15 by 30 feet in diameter, placed at one end of each pod. The yard contains no basketball hoop, no drinking fountain, and no toilet. The only equipment is a small rubber ball available to prisoners who purchase it. A stainless steel plate covers one-half of the yard; the remaining half gives the inmate his only glimpse of natural light and the outside world, except what he can see through his cell window. Yet many seriously ill prisoners go for weeks without going to the yard because their privileges have been removed for disciplinary reasons or because their mental illnesses make them fearful of leaving or too depressed to move . . . . . .

56). The INMATES' CONTACT WITH FAMILY AND FRIENDS OUTSIDE
PRISON IS INFREQUENT, UNCOMFORTABLE, AND WITHOUT ANY KIND
OF PHYSICAL CONTACT. TELEPHONE CALLS ARE LIMITED TO ONLY
EMERGENCIES SUCH AS THE DEATH OF A FAMILY MEMBER AND
( LEGAL CALLS ALSO ARE LIMITED TO " EXTRAORDINARY CIRCUMSTANCES)
VISITS ARE CUMBERSOME, EXPENSIVE, SHORT, AND INHOSPITABLE.
EXCEPT FOR VISITS BY LAWYERS, EACH VISIT MUST BE ARRANGED
WEEKS IN ADVANCE FOR A SPECIFIC TIME AND IS FORFEITED
IF THE VISITOR IS LATE. MOST VISITORS MUST MAKE AN
OVERNIGHT CAR TRIP, SINCE TAMMS IS 370 MILES FROM
COOK COUNTY, WHERE THE FAMILIES OF MOST PRISONERS RESIDE.
NON-LEGAL VISITS LAST TWO HOURS. A THICK GLASS SHIELD
SEPARATES THE VISITOR AND THE INMATE, WHO TALK THROUGH A
MICROPHONE THAT DISTORTS VOICES AND CUTS OFF A ——
CONVERSATION IF ONE PERSON TALKS OR LAUGHS WHILE THE OTHER
IS TALKING. ALL CONVERSATION (EXCEPT BETWEEN ATTORNEY AND
CLIENT) IS RECORDED. THE PRISONERS' LEGS ARE SHACKLED
AND CHAINED TO A BOLT IN THE FLOOR. IF THE PRISONER IS
IN SEGREGATION STATUS, HE WEARS HANDCUFFS ATTACHED BY
A SHORT CHAIN THAT MAKES IT DIFFICULT FOR HIM   TO
GESTURE OR EVEN TO SCRATCH HIS FACE...

57). FOR SOME PRISONERS, THESE CONDITIONS OF SOCIAL ISOLATION,
RESTRICTED MOVEMENT, AND RESTRICTED EXTERNAL STIMULATION
MAY BE BEARABLE. FOR SERIOUSLY MENTALLY ILL PRISONERS, ——
HOWEVER, THE CONDITIONS CAUSE SUFFERING THAT AMOUNT TO
CRUEL AND UNUSUAL PUNISHMENT.....

COUNT # 5

## DEFENDANTS HAVE ACTED WITH DELIBERATE INDIFFERENCE TO PLAINTIFFS' SERIOUS MENTAL HEALTH NEEDS

DEFENDANTS DELIBERATE INDIFFERENCE TO PLAINTIFFS' SERIOUS MENTAL HEALTH NEED IS SHOWN BY SYSTEMIC DEFICIENCIES IN THE MENTAL HEALTH CARE SYSTEM AT TAMMS, SUPERMAX, PRISON . . .

58).

). THE DELIBERATE INDIFFERENCE OF DEFENDANTS' TO THE SERIOUS MENTAL HEALTH NEEDS OF PLAINTIFFS AND THE PLAINTIFF CLASS IS DEMONSTRATED BY SYSTEMIC DEFICIENCIES IN THE STAFFING, FACILITIES, AND PROCEDURES OF THE MENTAL HEALTH CARE SYSTEM AT TAMMS WHICH MAKES UNNECESSARY SUFFERING INEVITABLE. IN CREATING AND THEN FAILING AND REFUSING TO CURE THE SYSTEMIC DEFICIENCIES, DEFENDANTS HAVE ACTED WITH DELIBERATE INDIFFERENCE TO THE SERIOUS MENTAL HEALTH NEEDS OF PLAINTIFFS' AND THE PLAINTIFF CLASS, AND, IN DOING SO, HAVE UNNECESSARY AND WANTONLY INFLICTED SEVERE PAIN AND SUFFERING ON THEM. THESE SYSTEMIC DEFICIENCIES, WHICH ARE THE OVERALL RESPONSIBILITY OF DEFENDANTS, WALKER, AND THE PARTICULAR RESPONSIBILITY OF DEFENDANTS DRS. RHODES, CHANDRA, POWERS, KHAN, SCOTT, NAVARRO, ELYEA, WEINER, DOBIER, WEIDNER, KACHIGIAN, GNU, ARE AS FOLLOWS :

(A). ALTHOUGH "MENTAL HEALTH CONCERNS" MUST BE CONSIDERED WHEN A PRISONER IS TRANSFERRED TO TAMMS, THERE IS NO REQUIREMENT THAT MENTALLY ILL PRISONERS BE EXCLUDED AND THERE IS NO ADEQUATE SYSTEMATIC PROGRAM FOR SCREENING AND EVALUATING THE MENTAL HEALTH STATUS OF PRISONERS BEING PROPOSED FOR TRANSFER. IN FACT, PRISONERS KNOWN TO HAVE HISTORIES OF SERIOUS MENTAL ILLNESS ARE TRANSFERRED TO TAMMS, SUPERMAX, PRISON . . . .

18

(B). There is no requirement that prisoners who decompensate at Tamms be removed from the facility and no adequate systematic program for identifying such prisoners. Instead, defendants ignore the obvious signs of prisoners' mental deterioration, despite their ——— knowledge that the environment at Tamms tests even the strongest inmate . . . . .

(C). There is no adequate systematic program to provide care at Tamms for seriously mentally ill prisoners. Instead, the mental health system operates as an adjunct to the harsh punishment system. By "treating" prisoners with techniques that are in intent and purpose, methods of punishment which will make seriously ill prisoners sicker, not better. These techniques include (i). Ordering the suicidal inmate to undergo extreme isolation while lying naked in cold, stripped cells. Sometimes while bound in four-point restraints and while injected with mind-numbing drugs against his will. . . . (ii). Allowing guards to handle an inmate more roughly than is necessary while in the health care unit or while bringing him back from the health care unit or while on the wing. (iii). Withholding talking therapy from an inmate because he is demonstrating disruptive behavior that is directly caused by his mental illness; and (iv). Denying prisoners the right to send or receive mail (including legal mail) and the right to basic toiletries such as a toothbrush, toothpaste, soap, deodorant, shampoo ect. while they are in the health care unit or on the wing. Prisoners are denied showers while in the health care unit or while on the wing. . . . .

(D). Mental health treatment at Tamms lacks the commitment of a psychiatrist to identify and treat in an ——— individualized manner those prisoners suffering from from serious mental disorders. Instead, the prison has been served by a series of psychiatrists whose main function is to prescribe drugs instead of to oversee the individual monitoring, evaluation, and treatment of prisoners. There's no longer a clinical supervising ——— psychologist at Tamms, to oversee mental health care

Social workers. The Health Care Unit Administrator, who is a Nurse is allowing mental health professional social workers to make clinical diagnosis, which are way beyond their professional judgment. . . . . .

(E). Defendants, Rhodes, Chandra, Navarro, Powers, Elyea, Scott, Khan, Weiner, Dobier, Weidner, GNU, Kachigian, Routinely allow security concerns to compromise their duties to the prisoners who are their patients. (For example) they breach their promises of confidentiality to patients by sending written mental health reports to a non-medical personnel, and they allow security personnel to dictate that mental health sessions be conducted while the prisoner sits uncomfortably with his feet shackled to the floor and hands cuffed behind his back, with —— another set of leg iron's attached to the handcuffs then connected to a bolt in the concrete stole, in a room where guards can overhear the conversation . . . .

(F). Defendants have established five "elevated security" wings where a high percentage of the seriously mentally ill prisoners are unjustifiably isolated. The conditions are even more harsh and isolating than they are elsewhere at Tamms. The high noise level and the sense of danger and chaos on the wings, combined with the reluctance of mental health and other medical personnel to venture there, make the experience of living on these wings even worse than the experience of living elsewhere at Tamms . . . . .

(G). Accurate, complete, and confidential records of the mental health treatment process are not maintained. The records Tamms receives from other prisons are inaccurate, incomplete, and false, and often arrive long after the inmate does; the records Tamms —— maintains are inaccurate, incomplete, false, and disorganized, and the confidentiality of the prisoners' communications is breached repeatedly . . . . .

(H). THE ASSESSMENT AND TREATMENT OF SERIOUSLY MENTALLY ill OR DECOMPENSATING PRISONERS SOMETIMES IS DELAYED UNACCEPTABLY. THESE DELAYS ARE CAUSED, AMONG OTHER REASONS, BY; (i). TAMMS' RECEIPT OF SKETCHY RECORDS FROM OTHER INSTITUTIONS; (ii). THE REPETIVE, DELIBERATE FAILURE OF CORRECTIONAL OFFICERS TO RESPOND TO MENTAL HEALTH EMERGENCIES, AND (iii). THE SYSTEMATIC REFUSAL OF TAMMS MENTAL HEALTH WORKERS TO IDENTIFY AND TREAT THE HIGH PERCENTAGE OF PRISONERS WHO ARRIVE AT TAMMS SERIOUSLY MENTALLY ill OR WHO DECOMPENSATE THERE . . . . .

(I). BEHAVIOR ALTERING MEDICATIONS ARE PRESCRIBED AND IS ADMINISTERED IN DANGEROUS AMOUNTS, BY DANGEROUS METHODS, OR WITHOUT APPROPRIATE SUPERVISION AND PERIODIC EVALUATION. MEDICATIONS ARE ALSO DISCONTINUED FOR PURPOSES OF CAUSING INFLICTION AND WANTONLY PAIN AND SUFFERING, CAUSING PRISONERS MENTAL illNESSES TO WORSEN.

(J). PRISONERS ARE PUNISHED FOR BEHAVIOR THAT IS DIRECTLY AND OBVIOUSLY A CONSEQUENCE OF THEIR SERIOUS MENTAL illNESSES. THIS INCLUDES; (i). DISCIPLINARY METED OUT INFORMAILY, SUCH AS TAUNTING A PRISONERS WITH A FEROCIOUS DOG OR SPRAYING CAUSTIC CHEMICAL IN HIS EYES BECAUSE, IN A PLEA FOR ATTENTION, HE REFUSES TO GIVE UP HIS FOOD TRAY; (ii). DISCIPLINARY IMPOSED THROUGH THE FORMAL PRISON DISCIPLINARY PROCEDURE SUCH AS PUNISHING A PRISONER FOR DESTROYING STATE PROPERTY BECAUSE HE TRIED TO SWALLOW A PIECE OF MIRROR OR ATTEMPTED TO HANG HIMSELF WITH A NOOSE FASHIONED FROM A STATE-OWNED SHEET; . . AND (iii). CRIMINAL CHARGES CAUSED TO BE BROUGHT FOR RELATIVELY MINOR EVENTS THAT NORMAILY ARE OVERLOOKED OR RESOLVED THROUGH THE PRISON DISCIPLINARY PROCEDURE, AND THE FAILURE OF THE PRISON OFFICIAL'S TO CONSIDERED PRISONERS MENTAL HEALTH DURING IMPOSITIONS OF DISCIPLINARY ACTIONS, THAT WERE A DIRECT OR CAUSED BY HIS MENTAL illNESSES . . . .

(K). PHYSICAL RESTRAINTS ARE USED IMPROPERLY TO PUNISH RATHER THAN TO TREAT AND PROTECT MENTALLY ILL PRISONERS...

(L). ISOLATION IN A COLD STRIPPED CELL IS USED TO PUNISH RATHER THAN TO TREAT AND PROTECT MENTALLY ILL PRISONERS...

(M). TALKING SESSIONS WITH MENTAL HEALTH PROFESSIONALS ARE USED NOT TO TREAT PRISONERS BUT TO REWARD THEM FOR SUBMISSIVE CONDUCT THAT MAY BE HARMFUL TO THEIR MENTAL STATE AND OFTEN IS IMPOSSIBLE FOR THEM TO ACHIEVE.

(N). THE MENTAL HEALTH CARE PROGRAM FAILS TO IDENTIFY, TREAT, AND SUPERVISE PRISONERS WITH SUICIDAL TENDENCIES.....

(O). DEFENDANTS, HAVE ESTABLISHED A SPECIAL TREATMENT UNIT; FOR WHOM THEY HAVE DETERMINED TO BE TOO SERIOUSLY MENTALLY ILL, TO BE HOUSED AT TAMMS SUPERMAX, CALL C-MAX PRISON....

(P). THE SPECIAL TREATMENT UNIT (STU), IS USED BY THE MENTAL HEALTH PROFESSIONALS, NOT TO TREAT PRISONERS BUT TO REWARD THEM FOR SUBMISSIVE CONDUCT THAT IS HARMFUL TO THEIR MENTAL STATE, AND OFTEN IS IMPOSSIBLE FOR THEM TO ACHIEVE.....

(Q). THE SPECIAL TREATMENT UNIT (STU) AT TAMMS, ARE KNOWN TO EXACERBATE MENTAL ILLNESSES; BY. (i). PRISONERS, ON J-POD ARE PLACED IN INDIVIDUALS CAGES THAT ARE DESIGNED TO CAUSE PSYCHOLOGICAL ANIMAL LIKENESS CONDUCT. (ii). PRISONERS ARE FORCED TO GO TO INDIVIDUAL "YARD CAGES" THAT ARE DESIGNED FOR MONKEY LIKENESS CONDUCT, WHERE PRISONERS THROUGH FECES ON EACH OTHER. (iii). PRISONERS ARE REWARDED FOR SUBMISSIVE CONDUCT, BY ALLOWING THEM TO LISTEN TO THE RADIO OR TO WATCH TELEVISION. SPECIAL TRIPS TO THE COMMISSARY. ALLOWING PRISONERS TO WATCH ACTION-MOVIES, THAT SHOWS VIOLENCE, SEX, WEAPONS, AND WHICH ARE DISPOSITIVE TO THEIR MENTAL ILLNESSES AND CAUSES THEM TO CARRY OUT WHAT THEY SEE OR HEAR, AND ALLOW PRISONERS TO PLAY BOARD GAMES THEY CANNOT TOUCH.. WHICH THIS IS KNOWN TO EXACERBATE THEIR ILLNESSES..... AND TREATING OTHER SERIOUSLY MENTALLY PRISONERS DIFFERENTLY FROM THOSE WHO ARE NOT ON J-POD (STU)..

COUNT #4

DEFENDANTS, DELIBERATE INDIFFERENCE TO PLAINTIFFS'
SERIOUS MENTAL HEALTH NEEDS, ALSO IS SHOWN
BY A SERIOUS OF INCIDENTS OF MISTREATMENT

59). THE DELIBERATE INDIFFERENCE OF DEFENDANTS TO THE
SERIOUS MENTAL HEALTH NEEDS OF PLAINTIFF'S IS ALSO
DEMONSTRATED BY SERIES OF INCIDENTS OF MISTREATMENT
OCCURRING CLOSELY TOGETHER IN TIME. THE INCIDENTS
ARE DESCRIBED IN THE STATEMENTS ABOUT THE CLASS PLAINTIFFS'
SET FORTH BELOW. . . . . . .

60). IN CREATING AND THEN FAILING AND REFUSING TO CURE THE
CONDITIONS THAT ALLOWED THESE INCIDENTS TO OCCUR, THE
DEFENDANTS, HAVE ACTED WITH DELIBERATE INDIFFERENCE
TO THE SERIOUS MENTAL HEALTH NEEDS OF PLAINTIFFS AND THE
PLAINTIFF CLASS AND IN DOING SO, HAVE UNNECESSARILY AND
WANTONLY INFLICTED SEVERE PAIN AND SUFFERING ON THEM. . .

(A). CLASS PLAINTIFF CHRISTOPHER KNOX

61). CHRISTOPHER KNOX, IS A 32 YEAR-OLD MAN FROM COOK COUNTY IL
WHO WAS A PRISONER AT TAMMS Clc. FROM ABOUT JANUARY 10 2006,
UNTIL HIS TRANSFER OUT OF TAMMS Clc ON FEBRUARY 2 2006, TO
MENARD Clc. HIS TRANSFER TO MENARD Clc WAS FOR DUE TO HIS
HISTORY AND CURRENT MENTAL ILLNESSES. MR. KNOX, WAS GIVEN
INPROPER MENTAL HEALTH TREATMENT WHILE IN MENARD Clc, AND
HIS MEDICATIONS WERE INCREASED WITHOUT HIS KNOWLEDGE
OR CONCENT FOR THAT INCREASE MEDICATIONS WHICH HAD CAUSED
EXTREME SIDE EFFECTS UPON HIM. . . . .

62). MR. KNOX, MENTAL ILLNESSES WERE EXACERBATED BY THE
UNLAWFUL TREATMENT BY BOTH MENTAL HEALTH AND MEDICAL
PERSONNEL'S, AND AS A RESULT IT CAUSED MR. KNOX, TO ATTEMPT
SUICIDE BY HANGING HIMSELF, AND DUE TO SECURITY BEING
RESPONSIBLE THEY WERE ABLE TO SAVE MR. KNOX, LIFE. MR. KNOX,
LATER STARTED MUTILATING HIMSELF BY CUTTING ON HIS ARMS,
AND INSERTING OBJECTS INTO HIS PENIS WHICH RESULTED IN
MR. KNOX, HAVING TO BE SENT TO A OUTSIDE HOSPITAL AFTER THE
MEDICAL DOCTOR AND SEVERAL CORRECTIONAL EMPLOYEES PERFORMED
AN ILLEGAL SUGERY ON MR. KNOX AND USING EXCESSIVE FORCE
UPON MR. KNOX. . . . . .

63 ). MR. KNOX. WAS lATER TRANSFERRED FROM MENARD °/c TO THE DEPARTMENTS' MENTAL HEALTH UNIT ON MARCH 28 2006. FOR THE MENTAL HEALTH AND MEDICAL REASONS. AND WHILE AT DIXON °/c MENTAL HEALTH UNIT. MR. KNOX. WERE GIVEN UNLAWFUL MENTAL HEALTH AND MEDICAL TREATMENT. AND SUBJECTED TO EXCESSIVE FORCE. FOR PROBLEMATIC BEHAVIOR CAUSED BY HIS MENTAL ILLNESS AND SUBJECTED PSYCHOLOGICAL CONDITIONS OF CONFINEMENT THAT HAD EXACERBATED HIS ILLNESSES WORSER .

64 ). MR. KNOX. WAS PLACED IN A COLD STRIPPED CELL WITHOUT ANY PROPERTY. HE HAD NO MATTRESS, BLANKET. HE WERE'NT ALLOWED A SHOWER, SOAP. TOOTHBRUSH, TOOTHPASTE. HE COULD'NT HAVE ANY CLOTHING. WERE'NT ALLOWED TO GO TO THE YARD. A PLASTIC SHIELD WERE PLACED IN FRONT OF HIS CELL DOOR MAKING ANY COMMUNICATION MORE DIFFICULT. . . .

65 ). MR. KNOX. MEDICATIONS WERE INCREASED IN DANGEROUS AMOUNT ON THE DATES OF HIS PSYCHOLOGICAL TESTING. MR. KNOX. WAS GIVEN DANGEROUS AMOUNT OF MIND - NUMBING MEDICATIONS TO SEDATE HIM DURING All PSYCHOLOGICAL TESTING. DURING THE TESTING MR. KNOX. HAD PROBLEMS CONCENTRATING, REMEMBERING, AND MAKING DECISIONS. ON THE DATES OF THE TESTING MR. KNOX. WERE RESTRICTED BY HANDCUFFS' BEHIND HIS BACK THROUGHOUT THE ENTIRE TESTING PROCESS. . . .

66 ). THE "EIGHT" PSYCHOLOGICAL TESTS' WERE GIVEN TO MR. KNOX. BY DEFENDANT, DAVID WEIDNER. A POSTDOCTORAL RESIDENT. WHO AT THAT TIME WERE NOT LICENSE AND UNSUPERVISED THROUGHOUT THE ENTIRE TESTING PROCESS. .

67 ). MR. KNOX. WAS NOT COOPERATIVE. ALERT AND ORIENTED TO PERSON. PLACE, TIME, AND SITUATION THROUGHOUT All TESTING PROCESS. MR. KNOX. WAS NOT WELL- GROOMED. HE HAD AN LARGE SOMEWHAT CLUMPS AS AN HAIRSTYLE THAT COULD'NT BE IDENTIFIED, WHICH LOOKED LIKE AS IF IT HAS'NT BEEN WASHED IN YEARS. . . . MR. KNOX. CUFFS' ON HIS JUMPSUIT WERE DIRTY AND NASTY LOOKING. AND SMELLED LIKE FUNK AS IF MR. KNOX. HAD'NT HAD AN SHOWER IN WEEKS. MR. KNOX. EXHIBITED INAPPROPRIATE PERSONAL HYGIENE. MR. KNOX. WAS SHOWING SIGNS OF PSYCHOMOTRISJ AGITATION , HIS THOUGHTS PROCESS APPEARED TO BE ILLOGICAL AND ALSO. DISORGANIZED. MR. KNOX. SPEECH, TONE, RESPONSE, lATENCY AND PROSODY WERE All ABNORMAL. . . .

24

68 ). MR. KNOX, WAS TRANSFERRED BACK TO TAMMS CIC ON APRIL 14 2006,
AND PLACED IN THE HEALTH CARE UNIT, IN A COLD STRIPPED CELL,
WITHOUT A MATTRESS, BLANKET, SHEETS, CLOTHING. MR. KNOX, WAS
NOT ALLOWED THE NECESSITIES THAT HE NEEDED. MR. KNOX, WAS NOT
ALLOWED TO TAKE A SHOWER. MR. KNOX, WERE PLACED UNDER
THOSE SAME PSYCHOLOGICAL CONDITIONS OF CONFINEMENT THAT
HE WERE UNDER THROUGHOUT HIS ENTIRE STAY AT DIXON CIC..

69 ). DEFENDANTS, CHANDRA. STOPPED MR. KNOX, PROSCRIBED ——
MEDICATIONS FOR HIS IMPLUS CONTROL DISORDER AND HIS
MAJOR - DEPRESSION, WITHOUT MR. KNOX CONCENT OR KNOWLEDGE.

70 ). MR. KNOX. BEGIN TO START MENTALLY DETERRORATING WITHOUT
HIS MEDICATIONS, WHICH CAUSED MR. KNOX, TO EXPERIENCE
OTHER PSYCHOLOGICAL PROBLEMS, WHICH THE DEFENDANTS HAS
FAILED AND HAS REFUSED TO TREAT MR. KNOX . . .

71 ). MR. KNOX. WERE DENIED MENTAL HEALTH TREATMENT DUE
TO THE INACCURATE, INCOMPLETE, DISORGANIZED AND FALSE
MENTAL HEALTH RECORDS PROVIDED BY DIXON MENTAL HEALTH
AND MEDICAL PERSONNELS . . .

72 ). AS A RESULT OF ALL DEFENDANTS FAILURE TO PROVIDE
MR. KNOX, MENTAL HEALTH TREATMENT. IT HAS EXACERBATED
HIS MENTAL ILLNESSES, AND IS THE RESULTS OF ALL HIS ——
SUICIDE ATTEMPTS AND IS CAUSING HIS ILLNESSES TO WORSEN.

(B). CLASS PLAINTIFF (ANTHONY GAY) A.G.

73). (ANTHONY GAY) IS A (33) YEAR OLD MAN FROM ROCK ISLAND ILLINOIS, WHO IS A PRISONER AT TAMMS CORR. CENTER... WHO HAS BEEN TRANSFERRED IN AND OUT OF TAMMS SINCE IT OPENING, FOR MEDICAL AND MENTAL HEALTH REASONS. AND DUE TO HIS MENTAL HEALTH HISTORY AND CURRENT MENTAL ILLNESSES.. WHICH HIS MEDICATIONS WHICH WERE ALSO INCREASED WITHOUT HIS KNOWLEDGE OR CONCENT, WHICH HAS CAUSED EXTREME SIDE EFFECTS UPON HIM....

74). (MR. GAY). MENTAL ILLNESSES HAS EXACERBATED BY THE UNLAWFUL TREATMENT BY BOTH MEDICAL AND MENTAL HEALTH PERSONNEL'S, AND AS A RESULT, IT HAS CAUSED (MR GAY), TO REPEATEDLY MUTILATING HISSELF..

75). ON MARCH 14 2004, (MR. GAY), WAS ORDERED TO BE STRAPPED TO A METAL BED FRAME NAKED, IN A COLD CELL, WITH NOTHING TO EAT. FOR OVER ELEVEN HOURS...

76). ON APRIL 1 2004, (MR. GAY), WAS ORDERED TO BE STRAPPED AND CONFINED UNDER THOSE SAME CONDITIONS FOR OVER TWELVE HOURS. AND ON THAT DATE DEFENDANTS WITH KNOWLEDGE THAT (MR. GAY), HAD A PAPERCLIP BETWEEN HIS TEETH. AND STILL ORDERED THAT (MR. GAY) BE STRAPPED TO A METAL BED FRAME. WHICH CAUSED (MR. GAY) TO CHOKE ON THE PAPER CLIP. COMPELLING (MR. GAY) TO BE RUSHED TO AN OUTSIDE HOSPITAL...

77). ON APRIL 14 2004, (MR. GAY), WAS ORDERED TO BE STRAPPED TO A METAL BED FRAME NAKED, IN A COLD CELL, WITH NOTHING TO EAT, FOR OVER TWELVE HOURS....

78). On April 17 2004, (Mr. Gay), was confined under the same conditions (strapped to a metal bed frame — naked, in a cold cell, with nothing to eat) for over thirty-two hours. On May 8 2004, for over eleven hours, on June 30 2004 for eight hours, on July 2 2004 for four hours, and on July 11 2004 for over eight hours. . . . (Mr. Gay), were placed under such conditions maliciously and sadistically to cause harm. . .

79). On January 29 2004, (Mr. Gay) was transferred to Tamms C/C. On February 8, 2004, (Mr. Gay) begin to exacerbate, and started to mutilate his inner thigh. Since that date, (Mr. Gay) has mutilated his arm, leg, neck, and his penis at least thirty-five time or more. . . .

80). In May / 2004, (Mr. Gay), had to be rushed to an outside hospital where he had to undergo surgery and stayed in the intensive care unit for about a week. . . .

81). (Mr. Gay), suffers from a self-mutilation disorder, which means if he does not mutilate hisself, he will start experiencing extreme severe anxiety attacks. Defendants, refused to treat him with anti-anxiety medication, thereby causing him to continue to — mutilate himself and exposing him to extreme risk for committing suicide. . . .

82). (Mr. Gay), is completely isolated from ever other prisoner, at Tamm C/C. (Mr. Gay) is on a elevated — security wing by hisself, and especially created for (Mr. Gay), for his problematic behavior that is a direct cause by his mental illness. . . . .

27

83). (MR. GAY), IS NOT ALLOWED TO COMMUNICATE WITH OTHER PRISONERS, THIS IS SHOWN BY NOT ALLOWING (MR. GAY) TO BE ON THE SAME WING WITH OTHER PRISONERS OR NOT ALLOWING OTHER PRISONERS TO BE ON THE SAME WING WITH (MR. GAY)....

84). DEFENDANTS, HAS CREATED A SPECIAL CELL FOR —— (MR. GAY). THE CELL IS DESIGNED TO MONITOR — (MR. GAY), FROM THE NURSE'S STATION, WITH A VEDIO SURVEILLANCE CAMERA, THAT IS SET UP DIRECTLY INTO THE CELL...

85). OTHER PRISONERS WHO DISPLAY THE SAME EXACT — BEHAVIOR AS (MR. GAY) ARE PLACED IN THE HEALTH CARE UNIT, WHERE THE HAVE ACCESS TO MEDICAL, MENTAL HEALTH, AND SECURITY PERSONNEL'S....

86). FOR DEFENDANTS. REFUSED TO TREAT (MR. GAY) WITH ANTI - ANEIXTY MEDICATION OR TO TREAT HIM FOR HIS MENTAL ILLNESS, CONSTITUTE DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL NEED......

(c). <u>Class Plaintiff (Donnie White) D.W</u>

87). (Donnie White), is a (34) Year old man from Cook County. il. who is a prisoner at Tamms Corr. Center. who has been transferred in and out of Tamms since it opening. For medical and mental health reasons. and due to his history and current mental illnesses. ...

88). (Mr. White), has been diagnosed suffering from a serious major - depressive disorder. and has done so for many years ....

89). (Mr. White) was transferred out of Tamms C/c in 1998. in - which. Defendant Dr. Kelly Rhodes, ordered that — (Mr. White) be transferred out of Tamms C/c and to the Department psychiatric unit in Dixon C/c. where his medical and mental health needs could be met. in a therapuetically intensive care environment, because Tamms lacked the accurate treatment and facility..

90). (Mr. White), was transfferred back to Tamms in about 2003/2004. where he has undergone a psychological regressive mind state. in which (Mr. White) have severe and ruthless anxiety attacks and causes him to self-mutilate himself. ...

91). (Mr. White), has requested to receive adequate — mental health treatment. in which Defendants has denied (Mr. White) of. and to be treated with an anti - anxiety and depression medication which he were also denied..

92). on November 29 2006. (Mr. White) medication was discontinued (Mr. White), explained to Defendants, Drs. Rhodes and Chandra. that he needed his medication. They sent (Mr. White) a " Problem Identification exercise" to complete ....

29

93). (MR. WHITE), has on several occaussions has attempted to commit suicide, by hanging himself. Defendants has refused to treat him for his suicidal tendences.

94). (MR. WHITE) has been placed in cold cells, without nothing. Strapped to a metal bed frame naked without food to eat. for hours or sometimes days — ordered by Defendants. . .

95). (MR. WHITE), has been placed on elevated security wings and were not allowed to talk to other prisoners around him. Defendants, has retaliated against him for filing complaints against mental health staff. .

96). (MR. WHITE), has exacerbated severely mentally since his return back to Tamms clc and Defendants are failing to identify (MR. WHITE) mental illnesses. and provide mental health treatment . . . .

97). Defendants, have acted with deliberate — indifference to (MR. WHITE) serious medical needs.

## Count # 5

DEFENDANTS HAVE UNNECESSARILY AND WANTONLY INFLICTED SEVERE PAIN AND SUFFERING ON PLAINTIFF'S BY EXPOSING THEM TO THE CONDITIONS AT TAMMS C/C

96). DEFENDANTS ARE AWARE THAT THE EXCESSIVELY HARSH AND PSYCHOLOGICALLY DAMAGING CONDITIONS AT TAMMS C/C EXACERBATE EXISTING MENTAL ILLNESSES AND TRIGGER SERIOUS MENTAL ILLNESSES IN PRISONERS WHO PREVIOUSLY WERE CONSIDERED SERIOUSLY MENTALLY ILL. DESPITE THIS KNOWLEDGE, THEY CONTINUE TO SEND SEVERELY MENTALLY ILL PRISONERS TO TAMMS, ALLOW THEM TO REMAIN THERE FOR LONG PERIODS OF TIME AS THEIR ILLNESSES WORSEN, AND ALLOW OTHER PRISONERS TO REMAIN AFTER THE CONDITIONS AT TAMMS HAVE TRIGGERED SERIOUS MENTAL ILLNESSES IN THEM. IN EXPOSING THESE PRISONERS TO THE CONDITIONS AT TAMMS C/C. DEFENDANTS HAVE UNNECESSARILY AND WANTONLY INFLICTED PAIN AND SUFFERING ON THEM . . . .

## Count # 6

DELIBERATE INDIFFERENCE TO SERIOUS MENTAL HEALTH NEEDS IN VIOLATION OF THE EIGHT & FOURTEENTH AMENDMENT

97). PLAINTIFFS REALLEGE PARAGRAPHS (1-108) AS IF FULLY SET FORTH HEREIN.

IN DEMONSTRATING DELIBERATE INDIFFERENCE TO THE PLAINTIFF'S MENTAL HEALTH NEEDS AS DESCRIBED ABOVE, THE INDIVIDUAL DEFENDANTS VIOLATED THE RIGHTS OF PLAINTIFFS AND THE PLAINTIFF CLASS TO BE FREE OF CRUEL AND UNUSUAL PUNISHMENT UNDER THE EIGHT AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION . . . . . .

31

UNCONSTITUTIONAL CONDITIONS FOR SERIOUSLY MENTALLY ILL PRISONERS
IN VIOLATION OF THE EIGHT AND FOURTEENTH AMENDMENTS

100). PLAINTIFFS, REALLEGE PARAGRAPHS (1-100) AS IF FULLY SETFORTH HEREIN.

IN SUBJECTING PLAINTIFF'S TO THE UNCONSTITUTIONAL CONDITIONS DESCRIBED ABOVE, THE INDIVIDUAL DEFENDANTS VIOLATED THE RIGHTS OF PLAINTIFFS AND THE PLAINTIFF CLASS TO BE FREE OF CRUEL AND UNUSUAL PUNISHMENT UNDER THE EIGHT AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION...

## COUNT # 8
### VIOLATION OF STATE-CREATED LIBERTY OR PROPERTY INTEREST UNDER THE FOURTEENTH AMENDMENT

10| ). PLAINTIFFS, REALLEGE PARAGRAPHS (1-108) AS IF FULLY SETFORTH HEREIN.

PURSUANT TO 405 ILCS 5/2-102, SERIOUSLY MENTALLY ILL PRISONERS, AS RECIPIENTS OF SERVICES FOR PURPOSES OF THE ILLINOIS MENTAL HEALTH AND DEVELOPMENTAL DISABILITIES CODE, ARE ENTITLED TO BE PROVIDED WITH ADEQUATE AND HUMANE CARE AND SERVICES IN THE FORM OF MENTAL HEALTH TREATMENT BY MENTAL HEALTH PROFESSIONALS WHO EXERCISE THEIR PROFESSIONAL JUDGMENT IN DELIVERING THIS TREATMENT. THE RIGHT CREATED BY THE STATE MENTAL HEALTH CODE IS A LIBERTY OR PROPERTY INTEREST, PROTECTED UNDER THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT....

32

## COUNT # 1

## VIOLATION OF THE ADA

102). PLAINTIFFS, REALLEGE PARAGRAPHS (1-100) AS IF FULLY SET FORTH HEREIN . .

TAMMS IS OPERATED UNDER THE CONTROL OF THE DEPARTMENT, WHICH IS A PUBLIC ENTITY AS THAT TERM IS DEFINED IN 42 U.S.C. § 12131 . . .

EACH NAMED PLAINTIFF AND EACH MEMBER OF THE PLAINTIFF CLASS IS AN OTHERWISE QUALIFIED INDIVIDUAL WITH A MENTAL DISABILITY AS DEFINED UNDER THE ADA AND ITS — IMPLEMENTING REGULATIONS. . . . . .

THE DEPARTMENT HAS DISCRIMINATED AGAINST THE PLAINTIFFS ON ACCOUNT OF THEIR DISABILITIES IN THE FOLLOWING WAYS :

(A). CAUSING PLAINTIFFS TO SUFFER UNJUSTIFIED ISOLATION BY SENDING THEM TO TAMMS AND KEEPING THEM THERE DESPITE DEFENDANTS, KNOWLEDGE THAT THEY SUFFERED FROM A SERIOUS MENTAL ILLNESSES ; AND TREATING SERIOUSLY MENTALLY ill PRISONERS DIFFERENTLY FROM OTHER SERIOUSLY MENTALLY ill PRISONERS, WHO ARE ASSIGNED TO TAMMS SPECIAL TREATMENT UNIT (STU) . . . .

(B). FAILING TO REASONABLY ACCOMMODATE THE CLASS MEMBERS' DISABILITIES AND INSTEAD DISCRIMINATING AGAINST THEN IN WAYS THAT INCREASE THE SEVERITY OF THEIR ILLNESSES BY SUCH METHODS AS ADJUDICATING DISCIPLINARY CHARGES WITHOUT REFERENCE TO RELEVANT MENTAL HEALTH RECORDS AND BY FAILING TO ASSIST MENTALLY ill INMATES IN THE GRIEVANCE PROCESS AND INSTEAD ACTING TO THRWART THEIR EFFORTS TO FILE GRIEVANCES AND PURSUE THEM THROUGH THE ADMINISTRATIVE PROCESS . . . .

33

(C). DENYING CLASS MEMBERS ACCESS TO PROGRAMS, ACTIVITIES, AND SERVICES OF THE DEPARTMENT GRANTED AT ILLINOIS PRISONS OTHER THAN TAMMS SUCH AS CONTACT WITH OTHER PRISONERS OR ACCESS TO PRISON JOBS, REHABILITATIVE OR EDUCATIONAL PROGRAMMING, GROUP THERAPY, OUTDOOR EXERCISE, COMMUNAL RELIGIOUS PROGRAMMING, AN ADEQUATE LAW LIBRARY, THE USE OF ART SUPPLIES AND OTHER PERSONAL PROPERTY THAT COULD ENRICH THE QUALITY OF THEIR LIVES, THE ABILITY TO TALK TO FRIENDS AND RELATIVES BY TELEPHONE, AND AN APPROPRIATE SETTING FOR CONTACT VISITATION; AND

(D). SEGREGATING SOME CLASS MEMBERS AT TAMMS ON THE ELEVATED SECURITY WINGS, WHICH ARE ESPECIALLY CHAOTIC, NOISY, ISOLATED AND LESS MEDICAL AND MENTAL HEALTH TREATMENT THAN OFFERED ELSEWHERE AT TAMMS C/C ..

103). IN ACTING IN THE MANNER DESCRIBED ABOVE, THE DEPARTMENT HAS UNLAWFULLY DISCRIMINATED AGAINST PLAINTIFFS IN VIOLATION OF THE ADA - ACT .....

## Count # 10
## Violation of Section 504 of the Rehab Act

104). PLAINTIFFS, REALLEGE PARAGRAPHS (1-108) AS IF FULLY SET FORTH HEREIN.

THE DEPARTMENT RECEIVES FEDERAL FINANCIAL ASSISTANCE, THUS MAKING IT SUBJECT TO SECTION 504 OF THE REHAB ACT. 29 U.S.C. § 794 ....

EACH NAMED PLAINTIFF AND EACH MEMBER OF THE PLAINTIFF CLASS IS AN " OTHERWISE QUALIFIED INDIVIDUAL WITH A DISABILITY " AS DEFINED IN THE REHAB ACT AND THE IMPLEMENTING REGULATIONS ....

34

105). PLAINTIFFS REALLEGE PARAGRAPHS (102) OF COUNT # ___, AS IF FULLY SET FORTH HEREIN. . . . .

106). IN ACTING IN THE MANNER DESCRIBED ABOVE, THE DEPARTMENT HAS UNLAWFULLY DISCRIMINATED AGAINST PLAINTIFFS, IN VIOLATION OF THE REHAB ACT. . . .

## COUNT # 11

107). PLAINTIFFS, REALLEGE PARAGRAPHS (1-108) AS IF FULLY SETFORTH HEREIN.

THERE IS AN ACTUAL CONTROVERSY BETWEEN THE PARTIES REQUIRING THE COURT TO DECLARE THE RIGHTS AND OTHER LEGAL RELATIONS OF THE PARTIES. . . . . . .

## COUNT # 12
## INJUNCTIVE RELIEF

108). PLAINTIFFS, REALLEGE PARAGRAPHS (1-108) AS IF FULLY SETFORTH HEREIN.

UNLESS ENJOINED FROM DOING SO, DEFENDANTS WILL CONTINUE TO WILLFULLY VIOLATE THE RIGHTS OF PLAINTIFFS AND THE PLAINTIFF CLASS. THESE CONTINUING VIOLATIONS CONSTITUTE IRREPARABLE INJURY FOR WHICH PLAINTIFFS HAVE NO ADEQUATE REMEDY AT LAW. . .

WHEREFORE, PLAINTIFFS, REQUEST THIS COURT TO GRANT THE FOLLOWING RELIEF.

(A). CERTIFY THE PLAINTIFF CLASS OF ALL SERIOUSLY MENTALLY ILL PRISONERS WHO ARE NOW, HAVE BEEN BEFORE, OR WILL BE —— HEREAFTER INCARCERATED AT TAMMS CORRECTIONAL CENTER. .

(B). DECLARE THAT THE ACTIONS AND INACTION OF DEFENDANTS DESCRIBED HEREIN HAVE VIOLATED AND CONTINUE TO VIOLATES THE PLAINTIFFS, RIGHTS UNDER THE EIGHT AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION.

(C). ENJOINED DEFENDANTS FROM ENGAGING IN ANY, ACTION OR CONDUCT, OR FROM FAILING TO ACT IN ANY WAY, THAT VIOLATE THE PLAINTIFFS, RIGHTS THAT ARE MENTIONED ABOVE. . . .

(D). ORDER DEFENDANTS TO TAKE All ACTION NECESSARY TO REMEDY THE VIOLATIONS OF THEIR ABOVE - MENTIONED RIGHTS. . . .

(E). AWARD PLAINTIFFS, A JUDGMENT AGAINST DEFENDANTS - SEPARATELY AND JOINTLY FOR COMPENSATORY DAMAGES IN AN AMOUNT DEEMED PROPER BY THE FACT-FINDER. . .

(F). AWARD PLAINTIFFS, A JUDGMENT AGAINST DEFENDANTS SEPARATELY AND JOINTLY FOR PUNITIVE DAMAGES IN AN AMOUNT DEEMED PROPER BY THE FACT-FINDER. . . .

(G). AWARD PLAINTIFFS, A JUDGMENT AGAINST DEFENDANTS SEPARATELY AND JOINTLY FOR THEIR ATTORNEY'S FEES AND COSTS.

(H). AWARD PLAINTIFFS, A JUDGMENT AGAINST DEFENDANTS SEPARATELY AND JOINTLY FOR ANY OTHER RELIEF THAT THE COURT DEEMS JUST AND PROPER. . . .

RESPECTFULLY SUBMITTED

Christopher Knol         # (B61090 )

Donnie White            # (B33817 )

Anthony Clay            # (B62251 )

200 E. SUPERMAX, Rd
TAMMS, ILLINOIS  62988

INDIVIDUALLY AND ON BEHALF OF THE PLAINTIFF CLASS..

CHRISTOPHER KNOX ET AL )
Plaintiffs PRO SE )
) Case No. _____
v. )
)
DR. KELLY RHODES ET AL )
Defendants, )

## PROOF/CERTIFICATE OF SERVICE

TO: CLERK OF THE COURT       TO: PLAINTIFFS ADDRESS
    219 S. DEARBORN ST.           200 E. SUPERMAX, rd
    CHICAGO ILLINOIS             TAMMS, ILLINOIS
    60604                         62988

PLEASE TAKE NOTICE that on _____ MARCH 7 , 2008, I have placed the
documents listed below in the institutional mail at _____ Correctional Center,
properly addressed to the parties listed above for mailing through the United States Postal
Service: 1 - ORIGINAL AND 22 COPIES OF:
COMPLAINT. AND MOTION TO PROCEED IN FORMA PAUPERIS

**\* PLEASE STAMP FILE COPIES AND RETURN TO PLAINTIFFS \***
   AT THE ADDRESS SHOWN ABOVE: THANK YOU:
Pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/109, I declare, under penalty of perjury,
that I am a named party in the above action, that I have read the above documents, and that the
information contained therein is true and correct to the best of my knowledge.

DATE: 3 - 7 - 08

/s/ Christopher Knox
NAME: CHRISTOPHER KNOX
IDOC#: B61090
TAMMS Correctional Center
P.O. BOX 2000
TAMMS , IL 62988